FILED

1

NOV 2 1 2000

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
                    DEPUTY CLERK

```
 1            IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
 2                      AUSTIN DIVISION

 3   UNITED STATES OF AMERICA ) Docket No. A 99-CR-274 SS
                              )
 4   v.                       ) Austin, Texas
                              )
 5   GARY PAUL KARR           ) August 17, 2000

 6
                        VOLUME 12 of 12
 7                         SENTENCING
               BEFORE THE HONORABLE SAM SPARKS
 8
     APPEARANCES:
 9
     For the United States:     Mr. Gerald C. Carruth
10                              Mr. Daniel H. Mills
                                Assistant U.S. Attorneys
11                              816 Congress Avenue, Ste. 1000
                                Austin, Texas 78701
12

13

14
     For the Defendant:         Mr. Thomas W. Mills, Jr.
15                              Ms. Christi N. Williams
                                Mills & Presby
16                              5910 North Central Expressway,
                                Ste. 900
17                              Dallas, Texas 75206-5141

18

19
     Court Reporter:            Lily Iva Reznik, RPR, CRR
20                              United States Courthouse
                                200 West 8th Street
21                              Austin, Texas 78701
                                Ph: (512)916-5564
22

23

24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```



LILY I. REZNIK
UNITED STATES DISTRICT COURT        ORIGINAL
WESTERN DISTRICT OF TEXAS (AUSTIN)

106

1          THE CLERK:  The Court calls case No. A 99-CR-274, The

2    United States of America vs. Gary Paul Karr.

3          MR. CARRUTH:  Good afternoon, your Honor.  Gerald

4    Carruth and Dan Mills for the United States.  We're ready.

5          MR. T. MILLS:  Tom Mills and Christi Williams with Mr.

6    Karr, your Honor, and we're ready.

7          THE COURT:  Let the record reflect Mr. Karr is present

8    in the courtroom.  Counsel, I have reviewed the presentence

9    investigation report, the defendant's objections, and motion

10   to quash, the government's response to the motion to quash,

11   and the defendant's objections to the pre-sentence report, I

12   assume, after the addendum was issued.

13         So, Mr. Mills, you have the lectern.  We'll go through

14   these, if you'll --

15         MR. T. MILLS:  On which motion, Judge?

16         THE COURT:  This will be the objection to the

17   presentence investigation, first, and then, you can argue some

18   interconnection.  First objection with regard to paragraph 70,

19   the offense conduct has been handled.  The government objected

20   to the statement in there.  I guess that had been revised

21   before I ever saw it.

22         So objection No. 1 was sustained by the probation

23   officer.  Objection No. 2 by the government also, apparently,

24   was sustained and the presentence investigation revised before

25   it was presented to me.  Objection No. 3 was also sustained by

1    the probation officer and the document revised before it was

2    presented.

3          On the defendant's objections, the objection No. 1 of

4    paragraph 7, indicating what was in the record or what

5    occurred with the allegation the defendant followed Jon Murray

6    to the Frost Bank, the record will speak for itself.  And

7    statement of the defense with regard to the objection is

8    attached to the presentence investigation.  So that will be in

9    the evidence and the record is there.

10          There will be no influence on the Court with regard to

11    that evidence.  The evidence did not place Mr. Karr at the

12    Frost Bank.  The inference can be one way or the other.

13          MR. CARRUTH:  Excuse me, your Honor, if I might

14    respond for the record.  Witness Jason Cross testified that

15    Mr. Karr told him that Gary Karr was present when Jon Murray

16    picked up the gold at the bank and he was following Murray.

17    So that is in the record of Mr. Cross testified to that.

18          THE COURT:  In any event, it is not a calculable

19    guideline objection, and it will remain in the record.  On

20    objection No. 2, with the offense conduct with regard to

21    whether Judge Paul Borrmann did or did not determine anything

22    has nothing to do with sentencing.  The defendant's contention

23    is stated in the record, and it also has nothing to do with

24    the establishment of the sentence in this case.

25          Objection 3, the battery conviction was not confirmed

1    prior to the final submission of this, and so it was sustained

2    by the probation officer and written.  With regard to

3    objection No. 4, the defendant objected to the description of

4    his educational background, and the response is placed in

5    there.  I don't know if that satisfies the defendant or not,

6    but that is tantamount to all the information available to the

7    probation officer.  So that will handle that one.

8         On objection 5, paragraph 26, apparently, the

9    probation officer agreed, the defendant, counsel, and changed

10   the term "armed robbery" to "robbery."  Objection 6, on

11   criminal history, the defendant had objected to that.

12   Apparently, there was an earlier calculation on criminal

13   history using convictions more than 15 years, and that was

14   sustained by the probation officer under the literal wording

15   of the guidelines and revised before I received the

16   presentence report.

17        7, likewise, was sustained by the probation officer,

18   and the criminal history computation was apparently changed

19   before I received it.  8, the defendant objects to a reference

20   of the psychiatric evaluation in 1966.  It's no part and will

21   be no part of this sentence, simply a historical fact.  That

22   objection technically is overruled.

23        Objection 9, the defendant objects that Counts 2 and 3

24   should not be enhanced to mandatory life pursuant to the

25   United States' notice of enhancement.  I'll hear arguments and

1    evidence on that, if necessary.

2         Objection 10, the defendant objects that the

3    government's claim that an additional $100,000 should be added

4    based upon the gold coins that were never retrieved, I think,

5    is a miscommunication between the parties.  I think the

6    government's contention of restitution at $591,600, roughly,

7    is not based upon the missing $100,000 in gold coins that

8    ultimately went back to the United Secularists of America, but

9    is based upon testimony in a worksheet of the amounts of money

10   including, substantially, as we will get into, Rolex watches,

11   gold -- I mean, sale of a Mercedes, the diamond ring that,

12   ultimately, Mr. Karr sold, and various charges and withdrawals

13   of banks and credit cards.  That objection is overruled.

14   Objection 10.

15        Objection 11 is the reference of the government to the

16   armed robbery.  I can't do much what the government wants to

17   do in their own pleadings, but we'll make rulings on that.

18        So, we come back to the motion to quash and the

19   objection that there's no mandatory life sentence requirement

20   or determination to be made in Counts 2 and 3.  And with that,

21   I will state, first, and then I will hear whatever evidence

22   and presentation the defense and the United States Attorney

23   wishes to present.

24        But I have gleaned through this criminal history for

25   Mr. Karr.  Starting in 1963, we've got where he allegedly

1   burned down a garage of a girlfriend when she complained about

2   him that he was disciplined.  We've got a child molestation

3   and an auto theft, which sent him to the St. Charles Illinois

4   Training School until May of '64.

5          '65, when he got out of there, he had a theft, and in

6   1966, contributing to the delinquency of a minor, which is

7   described as several males getting a girl in a car and

8   committing intercourse with her.  And then, we go to October

9   5, '66, where he was convicted of indecent liberties with a

10  child, raping a 14-year-old girl.  On February 24, '72, he was

11  convicted of three separate robberies.

12         On 8-30-71, he was convicted of robbery.  On 9-20-71,

13  he was convicted of robbery.  Allegedly, there may have been

14  use of a toy pistol.  And, also, with the allegation of a toy

15  pistol would not be meaningful to me.  On October 15, '71, he

16  was guilty of a robbery, and this time, he used a firearm.

17         And on June 6, '75, he was sentenced for two armed

18  robberies, one occurring on July 31, '74, where he used a

19  sawed-off shotgun, and then, on September 24, '74, he used a

20  firearm.  And, again, a sexual assault occurred.  On April 21,

21  '75, he was convicted of an April 17, '74 armed robbery,

22  apparently, while he was in custody.  For that conviction, he

23  was convicted of the other '74 in June.

24         And then, on March 19, 1976, he was convicted of an

25  aggravated kidnapping, again, rape and, therefore, any use of

1   a sawed-off shut gun.  He was discharged from the penitentiary

2   in Illinois, on April Fool's Day, which turned out to be an

3   accurate discharge date, 1995, and four and a half months

4   later, he was involved in this crime.

5       Now, that's what's before the Court.  Now, Mr. Mills,

6   do you wish to make any presentation of evidence or simply

7   argument?

8       MR. T. MILLS:  We would like to offer into evidence

9   certain documents from Mr. Carruth's certified convictions.

10  There are some documents that I understand that Mr. Carruth

11  also wants for the record that we have some objections to, and

12  then, I would like to have argument.  And I'd like for Ms.

13  Williams to have the opportunity to address the Court on those

14  issues.

15      THE COURT:  Sure.  I'm not psychic.  If you've got

16  some exhibit, let's present them.

17      MR. T. MILLS:  Yes, sir.  We respectfully believe that

18  the government has the burden to make a prima facie case of

19  the three strikes series violent felonies, and would ask that

20  it submit to the Court that it's their turn to make an offer

21  of evidence.

22      THE COURT:  Well, I've stated what is before the

23  Court.  You have the motion and the right to speak first.  If

24  you wish to not make a presentation or presentation after, I

25  don't see that there's any point.  I don't know that anybody

8

1    has any burden as far as this is concerned.  These are just

2    the facts.  But my regular routine when the defense files a

3    motion is to ask them if they wish to make a presentation.

4          MR. T. MILLS:  Yes, sir.

5          THE COURT:  And --

6          MR. T. MILLS:  Well, then, I think --

7          THE COURT:  -- presentation of documents.  I don't

8    know what that will come into, but that was my next inquiry as

9    to Mr. Carruth as to whether or not he wished to make a

10   presentation of evidence.

11         MR. T. MILLS:  Well, we will do it in whatever order.

12   It seems, though, on this three strikes issue that the

13   government -- the Court needs to have some evidence that backs

14   up the notice of the three strikes filed by the government,

15   and Mr. Carruth has --

16         THE COURT:  This court does not need any notice.

17   Before it right now is an October 5, 1966 conviction with

18   indices -- indecent liberties with a child, a rape of a

19   14-year-old.  In February 24, '72, Mr. Karr had very good

20   legal representation, got two years and a day for three

21   felonies of robbery with the use of firearm and pistol, toy

22   pistol.

23         When he got out of there, he was convicted of armed

24   robbery, use of a sawed-off shotgun and a rape, and another

25   aggravated kidnapping with a rape and a shotgun involved.  So

1    the Court sees it's there.  Now, whatever evidence you want to

2    present or whatever evidence the government presents, I'm

3    going to give you full opportunity.  And if you want to pass

4    to the government, Mr. Carruth is usually ready.  Do you wish

5    to make any presentation?

6             MR. CARRUTH:  I do, your Honor.  I'd like to offer for

7    purposes of the record what's been marked for identification

8    as Government's Exhibits 1 through 8 inclusive, which I

9    represent to the Court are certified copies, either pen

10   packets from the Illinois Department of Corrections or

11   certified copies from the court clerks of the various courts

12   in which the defendant was convicted, as alleged in the

13   government's notice of enhancement and, also, the original

14   copy of the defendant's fingerprint card, dated 3-29-00.

15            And we have a fingerprint expert from the Department

16   of Public Safety present in court to testify, if necessary,

17   that he's compared the fingerprints of Mr. Karr with the

18   fingerprints contained in the pen packets, and that they are

19   one in the same individual.  We would offer those at this

20   time.

21            THE COURT:  Okay.  Has counsel seen those?

22            MR. CARRUTH:  Yes, he has, your Honor, he has copies.

23            MR. T. MILLS:  We would also offer --

24            THE COURT:  Let's get -- I've got the Government's 1

25   through 8.  Are there any objections to those?

1          MR. T. MILLS:  Yes, sir.

2          THE COURT:  All right.

3          MR. T. MILLS:  There are objections to certain pages

4    of those, but not to others.

5          THE COURT:  All right.  Well, let's get with it.

6          MS. WILLIAMS:  Your Honor, before we submit our

7    objections on these government exhibits, is it my

8    understanding of the Court's position at this point that the

9    Court is relying on the recitation of convictions contained in

10   the presentence report as sufficient evidence under the three

11   strikes law?

12         THE COURT:  These convictions are a matter of record.

13   The United States Probation Officers have confirmed them, and

14   the answer is yes to that.  Do you challenge any of them?

15         MS. WILLIAMS:  Well, your Honor --

16         THE COURT:  If you challenge any of them, you may

17   proceed in challenging them.  But right now, that is what's

18   before the Court on the United States probation investigation,

19   and I have no reason not to accept them.

20         MS. WILLIAMS:  Your Honor, on Government Exhibit 1,

21   the defendant does not object to records contained in

22   Government Exhibit 1 that are judgments of conviction and

23   supporting documentation as provided by the rules.  We do,

24   however, object to records included from the penitentiary such

25   as interviews by penitentiary psychiatrists as those are not

1  admissible; they're hearsay.

2      THE COURT:  Well, hearsay is admissible in a

3  sentencing procedure.  I have not seen them, but I can only

4  assume, counsel, that the United States Probation Officer has

5  seen them and come and embodied some of the information in the

6  presentence report, because some of the objections made by the

7  defense were two substantive statements that obviously would

8  have come from records like that.

9      If your objection is hearsay, it is overruled.

10     MS. WILLIAMS:  Additionally, your Honor, with regard

11 to the 1972 robbery convictions, it is unclear from Government

12 Exhibit No. 1 whether or -- on conviction in the cause No.

13 72-14 whether Mr. Karr was convicted of a robbery of Mr. Rezny

14 or of Mr. Harris.

15     THE COURT:  All right.

16     MS. WILLIAMS:  So it appears that there may be some

17 irrelevant information included in Government Exhibit No. 1.

18     MR. CARRUTH:  It's the same robbery, your Honor, there

19 were two victims.  He was indicted in indictment 7214 of two

20 counts of armed robbery against Mr. Rezny and a gentleman

21 named Mr. Harris, and he was allowed to plead guilty to the

22 lesser included offense of armed robbery.

23     As to the count involved --

24     THE COURT:  You mean robbery?

25     MR. CARRUTH:  Yes, plain robbery, yes, but it's the

1    same offense conduct.

2         MS. WILLIAMS:  Well, the conviction records, the

3    judgment reflects one conviction for robbery.  So for purposes

4    of consideration of three strikes under 3359, the defendant

5    objects that there is no way to tell whether or not he was

6    convicted of a robbery of Mr. Rezny or of Mr. Harris.

7         THE COURT:  All right.  The objection is overruled.  I

8    think you'll find that it's very simple to see, counsel, if

9    you use the dates of the criminal activity -- and there are

10   three separate dates there, August 30, '71, another robbery on

11   September 20, '71, and a third robbery on October 15, '71,

12   three distinct criminal facts.

13        MS. WILLIAMS:  And the indictments appear to have the

14   same date for Mr. Harris and for Mr. Rezny.

15        THE COURT:  Well, if it's consistent with what the

16   U.S. Attorneys say, that's one of the robberies.

17        MS. WILLIAMS:  Thank you, your Honor.

18        THE COURT:  You're welcome.

19        MR. CARRUTH:  We'd re-offer.

20        THE COURT:   Your objections to 1 are overruled, and

21   Government's Exhibits 1 and 8 are exhibits for the sentencing

22   proceedings and are received.

23        MR. CARRUTH:  Is that 1 through 8 inclusive?

24        THE COURT:  1 through 8.

25        MR. CARRUTH:  Thank you, your Honor.

1          THE COURT:  1 with objections, 2 through 8 without

2    objections.  Now, do you wish to make presentation of some

3    exhibits, too, Mr. Mills?

4          MR. T. MILLS:  No, sir.  We would just like the Court

5    to consider these same documents because we think and are

6    going to argue or have argued, also, that they do not prove up

7    serious violent felonies under 3359 or 3559.

8          THE COURT:  All right.  Government have any --

9          MR. CARRUTH:  I don't want to get the cart before the

10   horse here, your Honor.  I believe if he wants to assert his

11   affirmative defense that any of these are non-qualifying

12   felonies that he has the burden by clear and convincing

13   evidence to go forward with that.  I believe the government's

14   met its burden of proving that he has the requisite strikes

15   against him to qualify, and I believe the burden at this point

16   shifts to the defendant.

17         THE COURT:  Well, that may well -- I'm not too much

18   worried right now with the burden of proof.  You mentioned

19   that you had a handwriting expert.

20         MR. CARRUTH:  No, sir, a fingerprint expert.  And

21   since the exhibits are in without objection, I see no reason

22   to call him unless the defense is challenging his identity.  I

23   believe he's admitted or not denied that he has been

24   convicted.

25         THE COURT:  All right.  It's in evidence.  And you

*14*

1   don't see any reason to present evidence, then that's fine.

2   All right.  Mr. Karr, then, you have the lectern.  You may

3   make -- excuse me, Ms. Williams, if you wish to make the

4   arguments, you're free to do so.

5        MS. WILLIAMS:  Initially, your Honor, the defendant

6   objects to the Court not requiring the government to prove by

7   any burden, apparently, the convictions that they've alleged

8   in their information and notice of three strikes.

9        THE COURT:  Well, that's why we have a probation

10  department, counsel.  That's why they have worked diligently

11  for three months to find these convictions to get the

12  circumstances around them, to place them in writing not once

13  but twice before you to take whatever objections that you

14  wish, and give you this opportunity to challenge them if you

15  wish.

16       It is not just simply the government's burden.  The

17  probation officer have brought these facts.  And what I have

18  reviewed from the presentence investigation, as far as I'm

19  concerned at this point in time, is undisputed in the record.

20       MS. WILLIAMS:  Well, your Honor, it is disputed in the

21  record that these convictions constitute serious violent

22  felony.

23       THE COURT:  That's argument you're going to make, but

24  the fact of the convictions, the circumstances of the

25  convictions stand undisputed.  Now, you can make an argument

1    of law, of course, and that's what I anticipate.

2         MS. WILLIAMS:  And that is the substance of my initial

3    objection, your Honor, that -- is that the government should

4    have the burden to prove to the Court if they want you to

5    sentence this defendant.

6         THE COURT:  So you would like for them to open and

7    close, rather than you open and close?

8         MS. WILLIAMS:  Well, it would be my argument to you,

9    Judge, that they have the burden of proof.  If they want you

10   to sentence under 3559, that they have the burden of proof

11   that to prove to you that these convictions that they've

12   alleged in their information are serious violent felonies.

13   And unless and until they do that --

14        THE COURT:  Well, let me make the record as clear as I

15   can.  The conviction of October 5, 1966, the rape of a

16   14-year-old is a serious and violent felony.  The use of a

17   firearm in a robbery on February 24, '72, conviction on an

18   October 15, '71 criminal offense is a serious and violent

19   felony.  Also, the August 30, '71 and the September 20, '71

20   robberies with the use of a pistol, a play toy, in the Court's

21   judgment, is a serious and violent felony.

22        The victims had no idea if it was a play toy or not.

23   The conviction of June 6, '75, armed robbery with a sawed-off

24   shotgun, is a serious and violent felony.  A conviction on the

25   same time for the use of a gun, raping a woman in an armed

1    robbery is a serious and violent felony.

2        The aggravated kidnapping of October 10, '74, on the

3    conviction of April 19, 1976, with the use of a sawed-off

4    shotgun and, again, rape of a victim is a serious and violent

5    felony.  Those are determinations of the Court.

6        MS. WILLIAMS:  And for the record, your Honor, those

7    determinations are based on the recitation in the presentence

8    investigation report by the probation officer, correct?

9        THE COURT:  And the documents that I have admitted

10   into evidence along with the documents that are attached to

11   the pleadings that have been filed in this court.

12       MS. WILLIAMS:  And as such, do you want me to continue

13   with the motion to quash?  Or would you like to hear from the

14   government?

15       THE COURT:  Well, I'm going to hear from both of you.

16   Since you want Mr. Carruth to speak, I will allow him to

17   speak, as a matter of courtesy.

18       MR. CARRUTH:  Thank you.  Your Honor, I would like to

19   cite the court case of United States vs. Oberle, O-B-E-R-L-E,

20   cited in our brief, 136, Fed 3d, page 1414, it's a Tenth

21   Circuit case, 1998.  And on page 1424 of that opinion, the

22   Court held that the government introduce certified copies of

23   the defendant's four previous convictions.  The defendant

24   offered no evidence to contradict those certified copies.

25       Consequently, the government fulfilled its burden of

1   proving the defendant had at least two prior serious violent

2   felony convictions, and that the defendant was correctly

3   sentenced to life imprisonment under the three strikes law.

4   So we believe we've met our burden, your Honor.

5         MS. WILLIAMS:  For purposes of argument, your Honor,

6   do I understand the Court's ruling that for purposes of 3559

7   that the 1966 conviction is considered by the Court to be one

8   strike?

9         THE COURT:  Yes.

10        MS. WILLIAMS:  That the three 1972 convictions for

11  robbery are considered as the second strike?

12        THE COURT:  Either of them could.  I would place the

13  October 15, '71 offense with the use of a pistol first, but

14  correct.

15        MS. WILLIAMS:  And, your Honor, do you know -- do you

16  have in front of you --

17        THE COURT:  Or the aggravated kidnapping that occurred

18  on October 10, '74.

19        MS. WILLIAMS:  Okay.  That would be one of -- that

20  would be the third strike, correct?  There are three sets of

21  convictions prior to the instant conviction: 1966, 1971 or

22  1972.

23        THE COURT:  You've got three sets of convictions,

24  plural.

25        MS. WILLIAMS:  And the Court takes each of those as a

1 strike, those sets, something from each of those sets; is that

2 correct?

3       THE COURT:  Well, I have stated in the record the

4 violent felonies that he has been convicted of, and that's --

5 I don't know what else --

6       MS. WILLIAMS:  I just wanted to make sure that I'm

7 understanding that those that he received a concurrent

8 sentence for, there aren't two strikes contained in any

9 sentences for which he received a concurrent sentence.

10       THE COURT:  He would have had to have already been

11 convicted at the time.

12       MS. WILLIAMS:  Your Honor, additionally, I'd like to

13 address the indecent liberties with a child conviction.  The

14 Court has referred to that conviction several times during

15 this proceeding as the forcible rape of a 14-year-old.

16       In 1966, Illinois did have a forcible rape statute

17 wherein, if Mr. Karr had been convicted of forcible rape, he

18 would have been convicted under a different statute than he

19 was, in fact, convicted of.  The statute under which he was

20 convicted, that's detailed in the indictment contained in

21 Government's Exhibit No. 1, reveals that instead, there is no

22 reference either in the statute who are in the indictment to

23 any sort of force.

24       The government's allegation, I believe, is that under

25 Section 3559(c)(2)(f)(2) that that is a serious violent felony

1  because he could have received more than ten years, and it

2  had, as an element, force, the use of force or the threat of

3  force.  And it's the defendant's contention that that is, in

4  fact, not true, and it's not supported by the indictment, the

5  conviction, or the judgment.  That there was no use of force

6  in this indecent liberties with a child, 1966 conviction.

7       If, in fact, the facts had been that there was a

8  forcible rape and he was convicted of forcible rape, it would

9  have been under a different statute, and there would have been

10  use of force contained within that indictment.  Do you need to

11  say something?

12       MR. CARRUTH:  May I respond to that?

13       THE COURT:  Well, I just as soon hear all of it and

14  then, hear your arguments instead of piecemeal.

15       MS. WILLIAMS:  With regard to the 1971, 1972 robbery

16  convictions, the defendant objects that he should have

17  absolutely no burden of proof in a sentencing provision and

18  the fact that the statute requires that the defendant prove by

19  clear and convincing evidence, if he's convicted of robbery,

20  that a firearm was used, that a dangerous weapon wasn't used,

21  that there wasn't any serious bodily injury.

22       The defendant's position is that that is a violation

23  of constitutions, violations of his due process rights.

24  Defendant shouldn't have a burden of proof in a sentencing

25  conviction -- in a sentencing proceeding.  These convictions

1    happened back in 1972.  The only thing that the defendant has

2    to rely on are the records that the government's provided.

3           The government's brought no testimony.  They've

4    brought none of the victims.  They haven't brought the police

5    officers.  They haven't brought anything except what's

6    contained in Government's Exhibit 1.  And what's contained in

7    Government's Exhibit 1, your Honor, are items that are

8    attached to the defendant's motion to quash.  And what they

9    reveal is whether or not the defendant was indicted for armed

10   robbery.

11          He was not convicted of armed robbery, and he was not

12   convicted using any information or official statements of

13   facts that refer at all to the use of a weapon.  And I know

14   that the Court has indicated that you feel that a gun was used

15   in one of these crimes.  I'm still unclear --

16          THE COURT:  No, I don't feel like it, the

17   investigation has established it.  United States Probation

18   Department and the presentence investigation has determined

19   it, and I have heard nothing contravening it.

20          MS. WILLIAMS:  It is the defendant's contention that

21   in relying on documents that do not support the conviction in

22   this Cause No. 72-14 that the probation department, supported

23   by the government, has interjected facts into this conviction

24   that are not supported by that documentation.  And if the

25   Court would review the documentation and review --

1    THE COURT:  Every sentence I make under the Sentencing

2  Guidelines has a summary of the offense conduct with regard to

3  the conviction.  That's the whole point of expending the

4  taxpayers' money for a full investigation, and then, long

5  before sentencing, give you the results of those

6  investigations so that you can object to it, supplement it,

7  prepare and dispute it.  That procedure has gone through here.

8  You've been aware of a long time what's in that report.

9       Now, if you're objecting constitutionally about the

10  guidelines, nobody is a bigger supporter of that objection

11  than I, but the -- as I understand your objection or your

12  argument now is that the government should have the -- to go

13  back beyond investigations in what appear to be undisputed

14  facts and find witnesses and bring them up for the '66

15  conviction -- let's see, or the '71 convictions, or the '74

16  convictions.  Is that your position?

17       MS. WILLIAMS:  What I'm --

18       THE COURT:  If so, you can -- I'm going to let you

19  talk all you want to, but if that's your position, the Court's

20  not going to accept that.

21       MS. WILLIAMS:  My constitutional argument, your Honor,

22  doesn't really go to the Sentencing Guidelines; it goes to the

23  application of Section 3559, which is outside the guidelines.

24       THE COURT:  That's true, and which places -- I don't

25  have the statute.  Go ahead.

1    MR. CARRUTH:  Your Honor, I believe it's 83.

2    THE COURT:  I don't have the statute in front of me.

3  Is that where it says clear and convincing evidence?

4    MR. CARRUTH:  Yes, your Honor.

5    MR. D. MILLS:  Do you want to use my book, your Honor?

6    THE COURT:  Yeah.  I'll go ahead.  All right, counsel.

7  The statute itself puts in robbery cases for robberies not to

8  qualify as serious felonies.  The defendant, having the burden

9  to establish by clear and convincing evidence, that no firearm

10  or other dangerous weapon was used in the offense, no threat

11  of use of a firearm or other dangerous weapon was involved in

12  the offense, and that it did not result in death, serious

13  bodily injury.

14    MS. WILLIAMS:  And we certainly object as

15  unconstitutional that burden of proof.

16    THE COURT:  Well, take it up with your Congressman.

17    MS. WILLIAMS:  But inherent in the fact that the

18  statute talks about the burden shifting back to the defendant

19  is the fact that the government should have to prove something

20  before the burden shifts.  And that since 3559 is outside the

21  Sentencing Guidelines, the fact that the probation officer has

22  looked at some convictions and written a report, which I'm

23  sure he's a great probation officer, but the fact that he

24  writes this report shouldn't count as evidence under 3559

25  because we're outside the Sentencing Guidelines.

1          THE COURT:  Go on to your next point, counsel.

2          MS. WILLIAMS:  With regard to the robbery conviction

3   that the Court has referred to, October 15th, 1971, and with

4   regard to the visual statement of facts that the Court has

5   referred to, if the Court will look at page 5 -- and I don't

6   know any other way to do this, but the page counting from the

7   top, from the first page of Government's Exhibit No. 1, the

8   fifth page is the official statement of facts purporting to

9   support indictment No. 7214, and it recites that the facts in

10  this indictment number are as follows, and it lists the

11  elements of the offense.

12         Not included in this official statement of facts

13  anywhere is any reference to a weapon of any kind, firearm,

14  dangerous weapon, any sort of weapon.  And the defendant, in

15  filing the motion to quash -- and I'll incorporate those

16  exhibits so there's no need to take up the Court's time to do

17  that to count pages.

18         But in each of these robbery convictions from 1971,

19  the -- though the indictment refers to a gun, what the

20  defendant is actually convicted of -- and we don't know why

21  that was.  We don't know whether the Court determined that

22  there wasn't, in fact, ever a gun and that the indictment was

23  wrong.

24         But the fact is that the informations and the official

25  statements of facts that support each of these robbery

1    convictions in 1971 that he pled to in 1972 do not support any

2    evidence that a dangerous weapon was used, that a firearm was

3    used, or that anyone suffered serious bodily injury.  And

4    therefore, the defendant feels that we've proven by clear and

5    convincing evidence that those aren't serious violent

6    felonies.

7         THE COURT:  Well, that objection is overruled.  You

8    may go to your next one.

9         MS. WILLIAMS:  Additionally, your Honor, just to make

10   sure the record's clear, our argument that indecent liberties

11   with a child is not a serious violent felony, though we have

12   no burden of proof on that, we've put forth some evidence

13   referring back to Government Exhibit No. 1.

14        THE COURT:  And that objection is also overruled.

15        THE COURT:  Emphatically.

16        MS. WILLIAMS:  Thank you, your Honor.

17        THE COURT:  The rape of a 14-year-old girl with a

18   penalty that he could have received, we'll let you make that

19   argument to the Circuit every day.

20        MS. WILLIAMS:  Thank you, your Honor.

21        THE COURT:  You're welcome.

22        MR. CARRUTH:  Your Honor, if I might respond briefly.

23   First, with regard to the 1966 conviction for indecency with a

24   child, predicated upon the rape of a 14-year-old victim, Ms.

25   Williams argued there was no evidence in the record of use of

1    force.  I would call the Court's attention to the statement of

2    facts in that case, dated October 4, 1966.  It's attached as

3    Government Exhibit A to the government's brief.

4            It also appears in Government's Exhibit 1, certified

5    copy thereof, and this was approved by Charles Sidle, Judge

6    Presiding in that case.  And at the top of page 2, it says:

7    On June 30th, 1966, the defendant forced one Terry Nelson, age

8    14, into the basement of a house in Maple Park, Illinois,

9    where he had sex and intercourse with her against her will.

10   And that is evidence of use of force.

11           With regard to the defendant's burden on the robbery

12   conviction --

13           MS. WILLIAMS:  Excuse me, again, your Honor.  We

14   assert our objection to references to documents contained in

15   Government's Exhibit 1 for purposes of sentencing under 3559

16   that do not relate to judgments of conviction and supporting

17   documentation thereto.

18           THE COURT:  Objection's overruled.

19           MR. CARRUTH:  With regard to the other objection, your

20   Honor, I would like -- regarding the Illinois robbery, I would

21   like to cite the Court and the record to a case --

22           THE COURT:  Which one?  I have six.

23           MR. CARRUTH:  Well, we're talking about the 1971

24   robberies, your Honor, the three in '71 for which he was

25   convicted in '72.  I think that's the ones they addressed in

1    their motion to quash.

2         THE COURT:  All right.

3         MR. CARRUTH:  In United States vs. Wicks, W-I-C-K-S,

4    132 Fed 3d, 383, pages 386, 387, the Seventh Circuit, Court of

5    Appeals in 19 --

6         THE COURT:  Mr. Carruth, slow down a little bit,

7    please.

8         MR. CARRUTH:  I'm sorry.  This is cited in our brief.

9         THE COURT:  But Mrs. --

10        MR. CARRUTH:  United States.

11        THE COURT:  -- my Court Reporter hadn't had the brief.

12        MR. CARRUTH:  132, Fed 3d, 383, Seventh Circuit, 1997.

13   And that was a case directly on point because it dealt with

14   whether a robbery conviction under Illinois law, which the

15   defendant has many, was a serious violent felony.  And the

16   Seventh Circuit pointed out that under Illinois law, a person

17   commits robbery when he or she takes property, except in cases

18   involving a motor vehicle, which are covered by another

19   statute, from the person or presence of another by the use of

20   force or by threatening the imminent use of force.

21        And they said that this comported with the federal

22   definition of robbery under the three strikes law, and that

23   therefore, any robbery under Illinois law was a strike under

24   the three strikes law.

25        The defendant, Mr. Wicks, complained, as Mr. Karr does

1    in this case, that it was a denial of his due process to

2    require him to have the burden of going forward and proving

3    that the robbery convictions fell within the exception for

4    non-qualifying felonies.  And the Seventh Circuit held that

5    the provisions of the three strikes enhancement statute that

6    placed on the defendant the burden of showing prior robbery

7    conviction fell within an exception for non-qualifying

8    felonies did not violate due process.

9         And he pointed out that his sentencing hearing is just

10   that, a hearing, not a trial, where the procedural rules are

11   relaxed.  And every other appellate court, your Honor, that

12   has addressed this issue has held that it is not a denial of

13   due process to require the defendant to come forward and prove

14   by clear and convincing evidence that any of these felonies

15   are non-qualifying felonies and the defendant has failed to do

16   that in this case, your Honor.  And we respectfully request

17   his motion to quash be denied.

18        MR. T. MILLS:  We don't have anything further on that

19   issue, your Honor.

20        THE COURT:  Motion to quash is denied.  Sometimes I

21   guess we lawyers are inquisitive.  Count 2 and 3 were not

22   mandated by the statute to be life sentences.  Under the

23   guidelines, Mr. Karr's guidelines would be 292 to 365 months,

24   27-year plus sentence.  But the Court does overrule the

25   objection, does overrule the motion to quash.  If ever there

1  was a mandatory life sentence, this one qualifies.

2        Do you know of any legal reason we shouldn't proceed

3  with sentencing, Mr. Mills?

4        MR. T. MILLS:  No, your Honor.

5        THE COURT:  Does the government have any legal reason

6  not to proceed with sentencing?

7        MR. CARRUTH:  No, your Honor.

8        THE COURT:  Mr. Karr, if you and counsel will come

9  forward, please.  Mr. Karr, you've got the right -- you've

10 been listening to all of this.  You've got the right to say

11 anything that you wish.  You don't have to say anything, but

12 you have that right.  The procedure in this courtroom and the

13 federal courts is that you and your lawyers have the right to

14 say anything, and the government has the right to speak.

15       Probation department has the right to add anything, if

16 they wish.  Anybody in this courtroom has the right to speak,

17 and then, you and your lawyers, if you feel necessary, can

18 respond to any of the comments that are made.  I'll be glad to

19 hear from you or your lawyers, or both.  If you would like to

20 say anything, now is the time to speak.

21       THE DEFENDANT:  I'll let Tom speak for me.

22       THE COURT:  Mr. Mills.

23       MR. T. MILLS:  Mr. Karr has indicated that he

24 understands the appellate process that he's going to have to

25 go through, and that he understands the judicial

1    responsibilities that you have.  He has made statements, at

2    various times, either to law enforcement or in other

3    situations where he has expressed the opinion that the

4    prosecutor and law enforcement agents have viewed his role and

5    his degree of knowledge in this case incorrectly.

6         The jury has spoken, and he is prepared to be

7    sentenced at this time.

8         THE COURT:  Ms. William, anything you'd like to add?

9         MS. WILLIAMS:  No, your Honor.

10        THE COURT:  Government have anything they wish to say

11   at this sentencing?

12        MR. CARRUTH:  No, your Honor.

13        THE COURT:  Probation have anything they wish to add

14   at this sentencing?

15        PROBATION OFFICER:  No, your Honor.

16        THE COURT:  Does anyone in the courtroom wish to speak

17   at this sentencing?  Mr. Karr, the jury has spoken.  I think

18   the record is going to be clear under 18 United States Code

19   3559C, I'm going to sentence you to the mandatory life

20   imprisonment.  Even if the objections that your lawyers had

21   made were valid, which I do not believe they are -- I've had

22   the probation department determine what your guidelines would

23   be --  you would be, of course, a career offender.

24        You would have an offense level of 35, with a Criminal

25   History of VI, for a guideline range of 292 at the bottom and

1   365 at the top; is that correct, Mr. Green?

2          PROBATION OFFICER:  Well, your Honor, if the mandatory

3   life is viable, then it would --

4          THE COURT:  I'm talking about it was not.

5          PROBATION OFFICER:  Okay.  Yes, sir, that's exactly

6   right.

7          THE COURT:  So either way, it's a hard horse to ride.

8   I sentence you to life imprisonment in the custody of the

9   Bureau of Prisons on Count 2, and life imprisonment in the

10  custody of the United States Bureau of Prisons on Count 3.  On

11  Count 4, there is a 20-year maximum.  The reason that your

12  criminal history is only 12 points is that for the 15 years

13  less four months that you were -- before this crime, you were

14  in prison, and under 4A1.3, had you not had mandatory life, I

15  would have given you an upward departure in that case based on

16  27 points, not 12.

17         And using, roughly, the three points per item, it

18  would have left you with a 140 to 175 months on Count 4.  I

19  state that not to be sermonizing but simply on the record that

20  if there is resentencing in that case, you were looking at a

21  possible 365 months on Counts 2 and 3, and 4.

22         On Count 5, I sentence you to ten years in the -- I

23  sentence you to 115 months on Count 5, and 115 months on Count

24  4, to run concurrent with the life sentences.  With the

25  mandatory life sentences, the term of supervised release is

1   inconsequential.

2       I'll impose no fine in the case, however, I am charged

3   with the responsibility of assessing $100 per count for a

4   total of $400 under the Victims of Crime Act.  And with regard

5   to restitution, I submit that restitution will be in this case

6   in the following amounts to the estate of John O'Hair.  The

7   sum of $26,665.42, broken down as follows:  $5,000 value of a

8   Rolex watch, $6,665.42, expenditure of a diamond ring that you

9   ended up with and sold, and $15,000 proceeds from the sale of

10  a Mercedes automobile.

11      With regard to the estate of Madelyn O'Hair, the

12  restitution would be $2,500, representing the Rolex watch that

13  you ended up with.  For the estate of Robin O'Hair, the sum of

14  $2,500, representing the Rolex watch.

15      With regard to United Secularists of America, the

16  restitution is $512,000, represented by the $500,000 in gold

17  coins that were lost in this criminal activity along with a

18  $12,000 check that was made in your presence and the proceeds

19  received in New Jersey.

20      PROBATION OFFICER:  One thing.  The special assessment

21  should be $50 for each count, since it occurred before --

22      THE COURT:  All right.  Four times 50 for $200.  I

23  want the record to reflect and clear in that I am not

24  sentencing you under the career offender at this time because

25  the mandatory assess -- mandatory life sentences, and I am not

1   sentencing you pursuant to 4A1.3 for an upward departure on

2   any of those sentences because of the mandatory life sentences

3   that I've imposed.

4          A lot of legal jargon there, but do you understand the

5   sentences I've given you, sir?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  All right.  I will seal the objections and

8   the motion to quash, as well as the government's response to

9   that, and the presentence investigation in your case because

10  they have a lot of personal information.  It's nobody's

11  business but yours.  There are two exceptions to that --

12  three, actually.

13         In the case of an appeal, which I think is probable,

14  it becomes part of the record to be filed with the Court, the

15  government may use their copies for official purposes and

16  reasons, and you always have the right to authorize anybody to

17  review it by simply signing an authorization.  Do you

18  understand that?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  My last obligation is to give you this

21  letter that you will go over with your lawyers, but it's a

22  simple letter.  It tells you, you have ten days from this date

23  to file a notice of appeal.  If you do not file a notice of

24  appeal within the ten-day period, you forever waive that

25  right.  You will never have that right.  You can never legally

1  contest any part of these convictions or any part of this

2  sentence.

3          You'll just never have that right again.  All you have

4  to do is instruct your lawyers to file a notice of appeal.

5  They will do so because of that waiver.  But, first, Mr. Karr,

6  do you understand if you don't file it, you waive it forever?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And you understand you have ten days from

9  this date to file?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right.  I'll remand you to the custody

12  of the Marshal.

13          MR. CARRUTH:  Excuse me, your Honor.  I may have

14  misunderstood, but I thought I heard the Court order

15  restitution to the estate of Jon O'Hair, and request the Court

16  to change that to John Murray.

17          THE COURT:  Jon Murray.

18          MR. CARRUTH:  I knew that's what the Court meant, but

19  I just wanted the written document to reflect that.

20          THE COURT:  That is correct.

21          MR. CARRUTH:  Thank you, your Honor.

22          THE COURT:  We're in recess until 4:00.

23      (End of proceedings.)

24

25

```
 1                    *  *  *  *  *  *

 2

 3

 4   UNITED STATES DISTRICT COURT )

 5   WESTERN DISTRICT OF TEXAS    )

 6

 7       I, LILY IVA REZNIK, Official Court Reporter, United States

 8   District Court, Western District of Texas, do certify that the

 9   foregoing is a correct transcript from the record of

10   proceedings in the above-entitled matter.

11       I certify that the transcript fees and format comply with

12   those prescribed by the Court and Judicial Conference of the

13   United States.

14       WITNESS MY OFFICIAL HAND this the 21st day of November,

15   2000.

16

17

18

19

20

21                           LILY IVA REZNIK, RPR, CRR
                             Official Court Reporter
22                           United States District Court
                             Austin Division
23                           200 W. 8th Street, Room B17
                             Austin, Texas 78701
24                           (512)916-5564
                             Certification No. 4481
25                           Expires:  12-31-02
```