```
                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF TEXAS
                            AUSTIN DIVISION

UNITED STATES OF AMERICA,            ) AU:99-CR-00274(1)-LY
                                     )
   Plaintiff,                        )
                                     )
V.                                   ) AUSTIN, TEXAS
                                     )
GARY PAUL KARR,                      )
                                     )
   Defendant.                        ) JANUARY 12, 2021

         *********************************************
                TRANSCRIPT OF TELEPHONE CONFERENCE
                 BEFORE THE HONORABLE LEE YEAKEL
         *********************************************

APPEARANCES:

FOR THE PLAINTIFF:     DANIEL D. GUESS
                       MATT HARDING
                       UNITED STATES ATTORNEY'S OFFICE
                       903 SAN JACINTO BOULEVARD, SUITE 334
                       AUSTIN, TEXAS 78701

FOR THE DEFENDANT:     HORATIO R. ALDREDGE
                       FEDERAL PUBLIC DEFENDER'S OFFICE
                       504 LAVACA STREET, SUITE 960
                       AUSTIN, TEXAS 78701

                       CHRISTIE WILLIAMS
                       LAW OFFICE OF CHRISTIE WILLIAMS
                       1112 SOUTH ROCK STREET
                       GEORGETOWN, TEXAS 78626

COURT REPORTER:        ARLINDA RODRIGUEZ, CSR
                       501 WEST 5TH STREET, SUITE 4152
                       AUSTIN, TEXAS 78701
                       (512) 391-8791




Proceedings recorded by computerized stenography, transcript
produced by computer.
```

```
10:32:03   1              (In chambers)
10:32:03   2                    THE COURT:  We're here for a telephone conference in
10:32:04   3    Cause Number 99-CR-274, United States v. Gary Paul Karr.
10:32:09   4                    Starting with the government, tell me who is on the
10:32:14   5    line please.
10:32:14   6                    MR. HARDING:  Matt Harding for the United States,
10:32:17   7    Your Honor.
10:32:18   8                    MR. GUESS:  Dan Guess for the United States,
10:32:19   9    Your Honor.
10:32:20  10                    THE COURT:  And who is on the line for the defendant?
10:32:22  11                    MR. ALDREDGE:  Horatio Aldredge for Mr. Karr.
10:32:28  12                    MS. WILLIAMS:  And Christie Williams for Mr. Karr.
10:32:31  13                    THE COURT:  All right.  So I've got before me the
10:32:40  14    government's motion for continuance in this case.  Mr. Harding,
10:32:47  15    Mr. Guess, let me hear from you first.
10:32:50  16                    MR. HARDING:  Yes, sir.  The government's motion for
10:32:54  17    continuance is based on the desire, and I would argue need, to
10:33:00  18    provide a PSR in this case, Judge.  Although Federal Rule of
10:33:06  19    Criminal Procedure 32, it says there should be a PSR in a case,
10:33:11  20    I will say it is discretionary with the judge.  You can waive
10:33:16  21    that if you make certain findings on the record.  And, in
10:33:19  22    particular, your findings would be that the record as it stands
10:33:22  23    now is sufficiently developed for you to impose a sentence
10:33:25  24    regardless of a PSR.
10:33:27  25                    But I don't think that would be appropriate in this
```

case in light of several factors: One, obviously there's a great deal of time that has passed between the original PSR and now. And, of course, the defense wants you to consider some positive things about Mr. Karr that weren't contained in the PSR and couldn't have been, and the government will want you to consider some more negative things, again, that couldn't have been included in the first PSR because they weren't known at the time of writing.

Moreover, the Rule 32 suggests that another purpose of the PSR -- a revised PSR would be to calculate the guidelines. As the Court is probably aware from reviewing the first PSR, there essentially was no meaningful guideline calculation with respect to counts two and three because there didn't have to be one. The range of punishment was life, and it was going to be a mandatory life sentence. And so the guideline calculations were essentially irrelevant. Obviously, that's changed now.

And so, in light of the changed circumstances, you know, not only the possible statutory range of punishment but also the guideline ranges and the facts that both sides would like the Court to take note of, it seems beneficial to the Court and to the party to have a revised PSR, not only because, as the court knows, if we fail to calculate the guidelines properly in the first instance, basically, everything that happens after that is subject to attack on appeal. But even

| | | |
|---|---|---|
| 10:34:55 | 1 | barring that, if Mr. Karr were to waive a PSR and the PSR came |
| 10:35:03 | 2 | out against him and the sentence came out against him, then |
| 10:35:06 | 3 | we'd all be back here, potentially, on the 2255 again for |
| 10:35:10 | 4 | ineffective assistance of counsel. |
| 10:35:12 | 5 | In short, Judge, the government believes that a |
| 10:35:14 | 6 | modest delay now could save us a lot of time later.  And maybe |
| 10:35:17 | 7 | equally important, once the PSR comes out and the defense or |
| 10:35:22 | 8 | the government files their specific objections to it, that will |
| 10:35:26 | 9 | narrow the issues for the sentencing hearing to the point |
| 10:35:29 | 10 | where, hopefully, we could make it a very efficient hearing in |
| 10:35:33 | 11 | the future rather than having to go through every possible fact |
| 10:35:36 | 12 | that would not be contained in the PSR. |
| 10:35:39 | 13 | And so, Judge, for those reasons we think that a time |
| 10:35:42 | 14 | period of 90 days is appropriate.  I picked that time after |
| 10:35:46 | 15 | consultation with the probation department, because we don't |
| 10:35:48 | 16 | want them to be put in a position where they're up against the |
| 10:35:52 | 17 | wall on this.  But, obviously, we'll defer to the Court's |
| 10:35:57 | 18 | judgment. |
| 10:35:58 | 19 | THE COURT:  Ms. Williams? |
| 10:35:59 | 20 | MS. WILLIAMS:  Well, Your Honor, I understand the |
| 10:36:05 | 21 | government's position, but I also fear that they provided us a |
| 10:36:13 | 22 | great deal of discovery.  I have reviewed it all.  Ninety-seven |
| 10:36:16 | 23 | percent of it is discovery that was known prior to trial, so it |
| 10:36:23 | 24 | would have been covered in the first presentence report.  So |
| 10:36:25 | 25 | the amount of updates that the presentence report needs is |

```
10:36:29   1  extremely small, and so I'm confused why the government feels
10:36:33   2  that 90 days is even appropriate.
10:36:35   3              THE COURT:  Well, let me tell you how I feel, because
10:36:38   4  I'm -- I'll be honest with both of you, I'm a lot more
10:36:42   5  concerned about me than either one of you.  And I'm a little
10:36:46   6  bit annoyed on the way this has come down.
10:36:48   7              This case was transferred to me on August the 21st.
10:36:53   8  Up until that time, I had no earthly idea that anything was
10:37:00   9  going on in it.  I was advised shortly after that, and after
10:37:10  10  I'd reviewed the file and seen that Judge Sparks had indicated
10:37:19  11  that it should not be set for sentencing before January the
10:37:22  12  4th, that the parties were trying to work out a recommendation
10:37:29  13  to the Court and that we didn't need to proceed on anything in
10:37:36  14  this case while that was going on.
10:37:38  15              I then set the case for sentencing on January
10:37:42  16  the 20th.  You-all kind of erroneously refer to that as
10:37:47  17  "resetting."  I understood Judge Sparks to say it shouldn't be
10:37:51  18  sentenced before January the 4th, so I consider my setting to
10:37:54  19  be the first setting.
10:37:56  20              We then are advised fairly recently that your
10:38:05  21  discussions have broken down, and there will not be a
10:38:09  22  recommendation forthcoming to the Court.
10:38:12  23              Then I get the government's motion for continuance
10:38:22  24  which indicates that it will be opposed, but for the rather
10:38:28  25  vague reason that the defense has not been able to speak with
```

```
10:38:34   1   their client about it.  But that is now moot because I have
10:38:37   2   gotten the defense's response which says that this is opposed.
10:38:43   3            I was not the sentencing judge in this case
10:38:48   4   originally, so it is all new to me.  What has occurred since
10:38:57   5   the sentencing which has led to the need for resentencing has
10:39:04   6   been a pretty big shift in the entire situation involving the
10:39:11   7   original sentencing.
10:39:13   8            To try to review the original presentence
10:39:20   9   investigation report in the context of some minor changes would
10:39:26  10   do nothing, I think, but confuse me as to what was still
10:39:32  11   relevant and what was not relevant from the original sentencing
10:39:36  12   and would certainly confuse any subsequent court who looks at
10:39:43  13   this.
10:39:43  14            The best way -- and I would have expected both of you
10:39:46  15   to agree that this is the best way, both sides to agree,
10:39:50  16   because you're all good lawyers; you've been in front of me
10:39:55  17   before -- is to work with probation and determine what
10:39:59  18   probation needed to review in order to prepare a new, complete,
10:40:07  19   and thorough presentence investigation report based on the
10:40:11  20   facts as they exist now and new and updated guidelines
10:40:18  21   calculations.
10:40:18  22            The probation department advises me that the
10:40:24  23   department met with case agents at the end of December and was
10:40:27  24   given thousands of pages of reports which probation is
10:40:32  25   currently reviewing, and then on January the 4th, a week ago,
```

| | | |
|---|---|---|
| 10:40:38 | 1 | the defense sent the Bureau of Prisons records to the probation |
| 10:40:43 | 2 | department. |
| 10:40:51 | 3 | It would be just, I think, sheer folly to try to |
| 10:40:54 | 4 | proceed in this case based on that alone.  But now today, filed |
| 10:41:05 | 5 | yesterday, I have reviewed a sentencing memorandum from the |
| 10:41:08 | 6 | defense that I definitely want a response to by the government |
| 10:41:15 | 7 | or a parallel sentencing memorandum by the government. |
| 10:41:20 | 8 | I also, based on the way cases of some complexity |
| 10:41:27 | 9 | have gone in my court over the past years, would anticipate |
| 10:41:30 | 10 | that once the probation department prepares a new sentencing |
| 10:41:35 | 11 | memorandum -- I mean, a new presentence investigation report, |
| 10:41:39 | 12 | I'm going to get new sentencing memorandums from each side to |
| 10:41:47 | 13 | bring out additional things to this court.  And I also pretty |
| 10:41:53 | 14 | much feel that if we get a new presentence investigation |
| 10:41:58 | 15 | report, one or both sides may or may not have objections to |
| 10:42:03 | 16 | that presentence investigation report that I will need to |
| 10:42:07 | 17 | review.  I think that will also be true if I were to say I |
| 10:42:15 | 18 | would accept an abbreviated reported or a supplemental report |
| 10:42:21 | 19 | from the probation department. |
| 10:42:25 | 20 | Also out there is -- I have not heard, and so I'm |
| 10:42:30 | 21 | going to take this up now and I want the government to address |
| 10:42:33 | 22 | it first -- whether each side intends to present evidence at |
| 10:42:42 | 23 | the resentencing and how long you think a resentencing hearing |
| 10:42:48 | 24 | is likely to take. |
| 10:42:51 | 25 | So, Mr. Harding, Mr. Guess I'll start with the |

```
10:42:54   1  government.  What's your feeling on the logistics?  What's the
10:42:59   2  government intend to do with regard to witnesses at any
10:43:04   3  sentencing hearing the Court sets?
10:43:06   4              MR. HARDING:  Judge, assuming a new presentence
10:43:10   5  report comes out and we have, sort of, discrete objections to
10:43:14   6  the facts -- I spoke to Mr. Aldredge about this -- and I think
10:43:20   7  probably there will be, if a new report comes out, a fairly
10:43:26   8  limited set of facts that will actually be in dispute.  And so
10:43:29   9  I would anticipate under those circumstances, we would call a
10:43:34  10  witness because, for better or worse, we would like to give the
10:43:39  11  Court sort of an overview of the case to give some context
10:43:42  12  beyond just the words on the page.  But we don't want to
10:43:44  13  belabor anything here and repeat what's in the report to any
10:43:48  14  great extent.
10:43:49  15              But I would anticipate that if we have a new report
10:43:51  16  and what I anticipate to be limited objections to it, that our
10:43:56  17  presentation would be maybe an hour long.  Maybe a bit more,
10:44:00  18  maybe a bit less, but not an all-day affair, recapping the
10:44:07  19  entire case.
10:44:07  20              If there is no new presentence investigation report,
10:44:10  21  then I think it becomes substantially longer because there's a
10:44:13  22  lot of facts that need to be established that will not have
10:44:17  23  been recorded anywhere because it couldn't have been.
10:44:21  24              THE COURT:  All right.  Ms. Williams?  Mr. Aldredge?
10:44:28  25              MR. ALDREDGE:  Well, Your Honor, the good thing about
```

10:44:30   1   the record in this case is that we have a jury verdict.  And
10:44:34   2   what I anticipate is the only -- the only thing that I
10:44:38   3   anticipate would belabor anything at the hearing on this matter
10:44:43   4   is that the government is going to try to get the Court to look
10:44:47   5   beyond the jury verdict.
10:44:48   6              And, as Ms. Williams said, there is -- and as
10:44:52   7   Mr. Harding just said, as a matter of fact, there is very
10:44:55   8   little new evidence.  I would describe it as maybe six to ten
10:45:03   9   reports, but largely covering the same topics, though.  I'm
10:45:08   10  totally mystified about why it is that we would need so much
10:45:11   11  time to -- to generate an updated presentence report.
10:45:16   12             I mean, I have also reviewed the thousands of pages,
10:45:19   13  as Ms. Williams has, that apparently probation has been given.
10:45:23   14  It would be a total waste of time and totally duplicative for
10:45:28   15  probation to have to review this.  There is nothing new apart
10:45:31   16  from six to ten reports.
10:45:32   17             And so what I had encouraged Mr. Harding to do and
10:45:36   18  suggested when we spoke earlier this or last week, is that,
10:45:40   19  essentially, the government can submit a filing with any
10:45:44   20  updated information, because that would be the most efficient
10:45:47   21  and practical way to go about this.
10:45:49   22             And we have already -- obviously, our client's
10:45:52   23  situation is pretty discreet over the last 22 years, and we
10:45:57   24  have provided, you know, not very voluminous records from the
10:46:02   25  Bureau of Prisons.  That is the only update that we need from

```
10:46:06    1   our side.
10:46:08    2              And to answer your question about a presentation and
10:46:12    3   a hearing, I don't expect that we'll call any witnesses.  But I
10:46:18    4   am just mystified about why the need for so much additional
10:46:23    5   time.  It just doesn't make sense to me.
10:46:25    6              THE COURT:  Well, what do you think would be a
10:46:27    7   reasonable amount of time?
10:46:29    8              MR. ALDREDGE:  No more than 30 days.
10:46:34    9              THE COURT:  And since I've got you -- Mr. Aldredge,
10:46:39   10   I'll start with you, and then I'll go to the government on
10:46:41   11   this.  Do you anticipate this to be an in-person sentencing
10:46:45   12   hearing or a video sentencing hearing?
10:46:47   13              MR. ALDREDGE:  Well, Your Honor, I guess it would be,
10:46:52   14   you know, for Mr. Karr to have come all the way, I would
10:46:57   15   anticipate that it's an in-person hearing.  But, you know --
10:47:01   16              THE COURT:  Well, don't tell me what you anticipate.
10:47:04   17   Tell me whether or not it will be -- I mean, it's up to the
10:47:12   18   defendant, because to do it any other way than in person, he
10:47:17   19   will have to waive his right to be present in person.
10:47:22   20   Certainly that's something you should have taken up with him by
10:47:25   21   now.
10:47:26   22              MR. ALDREDGE:  It will be in-person.
10:47:27   23              THE COURT:  All right.  You know, we're still in the
10:47:30   24   middle of the plague, with Travis County cases and things
10:47:36   25   continuing to rise almost unabated, and we're trying to limit
```

```
10:47:42   1   courthouse and personal contact to as few people in here as we
10:47:48   2   can.  Do you not see that as a problem for January the 20th?
10:48:01   3              MR. ALDREDGE:  Yes, I do.  It's been a problem all
10:48:04   4   through the pandemic.  But, on occasion, we've made exception,
10:48:07   5   and I think everybody involved in the courthouse has been --
10:48:12   6   you know, been able to handle it, you know, to minimize risk.
10:48:20   7              THE COURT:  Well, I know, but that's a moving target
10:48:23   8   as the cases continue to go up.  We have made adjustments in
10:48:30   9   the past but not with this.  Also, I am advised that the
10:48:38  10   United States Marshal Service is on high alert because January
10:48:43  11   the 20th is inauguration day.  And they're requesting, not
10:48:51  12   knowing what demonstrations may be in state capitols around the
10:48:57  13   country that day, much less this United States Capitol, that we
10:49:03  14   limit what we're doing as much as we can between now and
10:49:12  15   through the 20th.
10:49:13  16              All that's a long way of saying that the 20th is
10:49:17  17   going to be off.  We're not going to do this on the 20th, not
10:49:22  18   only because I grant the government's motion for continuance in
10:49:25  19   part, but because I don't find it to be realistic to have an
10:49:33  20   in-person sentencing or anything in person in the courtroom for
10:49:40  21   a while, until we see what these cases or the rate of infection
10:49:45  22   is going to do, and also of security concerns because we don't
10:49:52  23   know whether anything that were to occur at the capitol here,
10:49:58  24   if anything, would spill over to federal buildings.
10:50:04  25              I do think that 90 days is not realistic or is longer
```

10:50:11  1  than is necessary.  I think the probation department can
10:50:16  2  prepare a new presentence report in fewer than 90 days, and I
10:50:21  3  would expect both sides to give the probation department all
10:50:28  4  the help they can.
10:50:30  5             Also, if we postpone this, we're likely to know a lot
10:50:37  6  more of the effect of the coronavirus.  Perhaps the
10:50:52  7  immunizations that are being handled less than efficiently in
10:50:56  8  my opinion will have given us some data by then.  But on the
10:51:02  9  whole, I don't think we need to bump this down the road 90
10:51:09  10  days.  I think 30 days, on the other hand, is probably a little
10:51:17  11  tight.
10:51:20  12             I'm going to grant the motion for continuance, as I
10:51:28  13  said, in part, and I want to reschedule this sentencing for
10:51:31  14  about 60 days from now -- in other words, in March.  We'll also
10:51:40  15  have a whole lot better feel on what we're doing in the
10:51:44  16  courthouse by March.
10:51:48  17             So I'm going to, based on your assurances you think
10:51:53  18  we can get this done in a day or less, I'm going to reset this
10:52:00  19  sentencing for nine o'clock on Friday, March the 12th.
10:52:12  20             Now, I want each side to discuss with the probation
10:52:21  21  department what the probation department needs in order to get
10:52:27  22  a presentence report prepared as far in advance of March
10:52:33  23  the 12th as the probation department can do this.
10:52:36  24             I will tell this to the government and to the
10:52:39  25  defense, that if I get last-minute filings in this case just

```
10:52:44   1   before the 12th, then I'm going to reset it again, because I'm
10:52:49   2   not going to be dealing with things in a case of a resentencing
10:52:55   3   like this with two positions that are taken in it when I don't
10:53:02   4   have adequate time to review everything.
10:53:05   5              The one sentencing memorandum I have right now from
10:53:08   6   the defense indicates effectively that the defense is going to
10:53:15   7   argue for a time served sentence.  I want everything I need to
10:53:22   8   consider in that regard at least a week before March the 12th.
10:53:30   9   In other words, anything you want me to consider at this
10:53:34  10   sentencing, whether it's objections to the presentence
10:53:37  11   investigation report, amended memoranda, or what have you, I'm
10:53:43  12   not gong to consider anything that gets filed after March the
10:53:47  13   5th if we're going to sentence this case on March the 12th.
10:53:51  14              What that means for each of you is:  Don't wait until
10:53:55  15   March the 5th to file an amended presentencing memorandum,
10:54:04  16   because then your opponent does not have time to respond to it,
10:54:11  17   because I'm not going to consider anything that's filed after
10:54:14  18   March the 5th.
10:54:15  19              So you-all might need to sit down with one another
10:54:18  20   and with the probation department and see when there is going
10:54:22  21   to be a presentence investigation report produced, set your own
10:54:28  22   deadlines, and work to where I have everything that I'm going
10:54:31  23   to consider by March the fifth.  I will probably want to have a
10:54:37  24   conference call with you-all sometime after the 5th and before
10:54:44  25   the 8th once I've seen what gets filed.
```

```
10:54:47   1            I do want a completely new presentence investigation
10:54:51   2   report.  I do not want a presentence investigation report that
10:54:56   3   has references to the old one.  We need a clean record here to
10:55:01   4   go forward with.
10:55:03   5            And just so you don't hear it on the street and have
10:55:08   6   consternation caused, 35 or 40 years ago, I represented one of
10:55:15   7   the victims in this case, Madalyn Murray O'Hair.  A long time
10:55:22   8   ago.  I think it was in the early '80s, but I can't remember
10:55:26   9   because it was forever ago.  So there you go.
10:55:30  10            So, is there anything else we need to take up in this
10:55:37  11   matter at this time?
10:55:41  12            MR. HARDING:  Nothing from the government, Judge.
10:55:42  13   Thank you.
10:55:45  14            MR. ALDREDGE:  No, Your Honor.
10:55:47  15            THE COURT:  All right.  One last thing.  Mr. Guess,
10:55:50  16   would you give me a call this morning when you get a chance.  I
10:55:55  17   need to speak to you about another matter.
10:55:59  18            MR. GUESS:  Yes, sir.  I'll call as soon as we're
10:56:01  19   done with this one.
10:56:02  20            THE COURT:  All right.  Well, thank you-all.
10:56:03  21   Everybody stay safe.  Have a good day.
10:56:06  22       (End of transcript)
          23
          24
          25
```

**UNITED STATES DISTRICT COURT**    )

**WESTERN DISTRICT OF TEXAS**       )

    I, Arlinda Rodriguez, Official Court Reporter, United States District Court, Western District of Texas, do certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

    I certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

    WITNESS MY OFFICIAL HAND this the 31st day of March 2021.

```
                              /S/ Arlinda Rodriguez
                              Arlinda Rodriguez, Texas CSR 7753
                              Expiration Date: 10/31/2021
                              Official Court Reporter
                              United States District Court
                              Austin Division
                              501 West 5th Street, Suite 4152
                              Austin, Texas 78701
                              (512) 391-8791
```